OPINION.
This case presents a finite question of law: is a purchaser of debt, attempting to collect the debt in its own name, a collection agency as defined in R.C. 1319.12(A)? If so, appellee Calvary, Investments, L.L.C., would have to comply with R.C. 1319.12(B), which requires a collection agency that takes assignments of debt to have a place of business in Ohio. Evidently, Calvary has no office here. We hold that Calvary is not a collection agency, so it is not subject to R.C. 1319.12. We also address an issue of joinder.
Calvary sued appellant Herbert M. Vonderheide, demanding $6,118 due on a credit-card account initially issued to Vonderheide by First National of Omaha, d/b/a First Bankcard Center ("First National"). Calvary had purchased the debt from First National after Vonderheide's default. Vonderheide counterclaimed, alleging that because Calvary was a collection agency under R.C. 1319.12, it was required to have a place of business in Ohio in order to collect the debt. He supported this allegation by maintaining that because Calvary met the definition of a "debt collector" under the federal Fair Debt Collection Practices Act,[1]
it must have been a collection agency under the Ohio statute. He also alleged that because Calvary claimed to be a creditor when it did not have a place of business in Ohio, it was guilty of misrepresentation and deceit in violation of the Federal Fair Debt Collection Act.[2]
Vonderheide also alleged that by asserting the position that it was a creditor, while contesting Vonderheide's allegation that it must have a place of business in Ohio under R.C. 1319.12, Calvary had engaged in misrepresentations and deception in violation of the Federal Fair Debt Collection Act. He sought a declaration that Calvary was a "seller/creditor." He also claimed over $50,000 in damages for personal anguish, breach of contract, deceit, and negligence.
Vonderheide further alleged that R.C. 1319.12(G) required First National to provide in its credit-card application the preservation-of-claims-and-defenses notice, also known as the Federal Trade Commission ("FTC") Holder Rule. Section 433.2, Title 16, C.F.R. requires the notice, which abrogates the holder-in-due-course doctrine, to be conspicuously placed on consumer credit contracts. Failure to do so constitutes an unfair practice or act under Section 5 of the Federal Trade Commission Act.[3] Vonderheide claimed that the notice was required because First National offered him the opportunity to enroll in an optional insurance program to protect his account in case of his disability, death or involuntary unemployment at the cost of fifty-nine cents per $100 of his ending monthly balance. He moved to join First National under Civ.R. 19 for the purpose of conducting discovery.
Calvary moved for judgment on the pleadings and dismissal of the counterclaims. Vonderheide moved for summary judgment on his counterclaims and Civ.R. 19 joinder. The trial court overruled Vonderheide's motions and granted Calvary's motions.
On appeal, Vonderheide raises three assignments of error. He claims that the trial court erred by failing: (1) to determine that Calvary was a debt collector or collection agency; (2) to rule on his allegation that Calvary must have a place of business in Ohio; and (3) to grant his motion to join First National under Civ.R. 19.
We begin our analysis by examining what the trial court ruled. It granted Calvary's motion for judgment on the pleadings with respect to its claim that Vonderheide owed Calvary $6,118. There was no dispute that Vonderheide owed the money.
Under Civ.R. 12(C), any party may move for judgment on the pleadings. In this case, Vonderheide, as the nonmoving party, was entitled to have all material allegations contained in the complaint, with all reasonable inferences that could be drawn from them, construed in his favor.[4] A Civ.R. 12(C) motion presents only questions of law, and the trial court is restricted to the allegations in the pleadings in making its ruling.[5] We hold that no error attended the trial court's entry of judgment on the pleadings for the money owed by Vonderheide to Calvary.
The trial court also granted Calvary's motion to dismiss the counterclaims. For the court to have properly dismissed the counterclaims under Civ.R. 12(B)(6), it had to appear beyond doubt from the counterclaims that Vonderheide could prove no set of facts entitling him to relief.[6] Essentially, Vonderheide's counterclaims against Calvary involved his interpretation of "collection agency" under R.C. 1319.12. This raised a question of law.
There is no dispute that Calvary purchased Vonderheide's debt from First National. R.C. 1319.12(A)(1) defines a collection agency as "any person who, for compensation, contingent or otherwise, or for valuable consideration, offers services to collect an alleged debt asserted to be owed to another." The statute also contains a section regarding collection agencies that take assignments of debt to sue in their own names.[7] The plain language of the statute is that a purchaser of a debt does not fall under the R.C. 1319.12(A)(1) definition, because it is pursuing collection on its own behalf. We hold that, as a matter of law, Calvary is not a collection agency as defined by the statute.
As to Vonderheide's second assignment, because Calvary is not a collection agency, the statute's requirement for a collection agency to have a place of business in Ohio is inapplicable. We understand Vonderheide's confusion because the attorney who filed the complaint initially named the plaintiff as Calvary as an assignee of First BankCard. The pleadings indicate that the caption's designation of Calvary as an assignee was erroneous — it was a purchaser of the debt. Resultantly, we conclude that Vonderheide's allegation that Calvary's defense that it was not a debt collector under the statute fails to state a claim. We overrule Vonderheide's first two assignments because the trial court was correct in granting Calvary's motion to dismiss.
A trial court has discretion in determining whether a party is necessary for adjudication under Civ.R. 19(A). Vonderheide alleges that R.C. 1319.12(G) required First National to give him notice under Section 433.2(b), Title16, C.F.R. when it offered him the option of purchasing insurance when he applied for a credit card. That section provides that a consumer credit contact must contain a conspicuous notice that a holder of the contract is subject to all claims and defenses that the debtor could assert against the seller of the goods or services obtained with the proceeds of any purchase-money loan. Thus, Calvary would arguably step into the shoes of First National.
Vonderheide claims that First National should have been joined as a party in order for him to obtain discovery of records of activity on his account and of whether other "purchases" contained the required notice.
R.C. 1319.12(G) merely states that the statute does not deprive a consumer of the right to assert the defenses provided in R.C. 1317.03.1 and Section 433, Title 16, C.F.R. both of which provide for notice of an abrogation of the holder-in-due-course doctrine. Traditionally, a holder in due course takes free of the claims and defenses that may have existed between the parties in the underlying transaction. The notice, in contrast, subjects an assignee of a consumer contract to all the claims and defenses the consumer could assert against the seller.
Vonderheide's "counterclaim" against First National was that it was a deceptive act for it, as a seller of insurance, to accept as payment for the sale of the insurance the proceeds of any purchase-money loan in the absence of the Section 433.2(b), Title 16, C.F.R. notice in the contract. That section makes it an unfair or deceptive act under the Federal Trade Commission Act for a seller to accept as payment for a sale or lease of consumer goods or services "the proceeds of any purchase money loan" unless the consumer credit contract made in connection with the loan contains the stated notice.
A seller is defined under Section 433.1(j), Title 16, C.F.R. as a "person, who in the ordinary course of business, sells or leases goods or services to consumers." A person is "an individual, corporation, or any business organization."[8] A creditor is "a person who, in the ordinary course of business[,] lends purchase money or finances the sale of goods or services to consumers on a deferred payment basis; [p]rovided, such person is not acting, for the purposes of a particular transaction, in the capacity of a credit card issuer."[9] Thus, a credit-card issuer, acting as such, is excluded from being a creditor under Section 433.1, Title 16, C.F.R. § 433.2, Title 16, C.F.R. by its terms applies to "sellers" of goods or services to consumers.
Further, we note parenthetically that Section 266.12, Title 12, C.F.R. (Regulation Z of the Truth-in-Lending Act) contains special provisions concerning credit cards — "When a person who honors a credit card fails to resolve satisfactorily a dispute as to property or services purchased with the credit card in a consumer credit transaction, the cardholder may assert against the card issuer all claims (other than tort claims) and defenses arising out of the transaction and relating to the failure to resolve the dispute."[10] The cardholder may withhold payment up to the amount of credit outstanding for the disputed property or services and any finance or other charges imposed on that amount. The amount of the claim or defense that may be asserted is limited to "the amount of credit outstanding on the disputed transaction at the time the cardholder first notifies the card issuer or the person honoring the credit card of the claim or defense."[11]
To hold First National liable for failing to have the Section 433.2(b), Title 16, C.F.R. notice, Vonderheide attempted to redefine First National as a person who, in the ordinary course of business, sold insurance services to consumers. He then contended in his claim against First National that it was seller of insurance whose policy was purchased under a purchase-money loan.
If we assume, for the sake of argument only, that First National sold insurance in the ordinary course of its business, then for Vonderheide to have a claim against First National under Section 433.2(b), Title 16, C.F.R. his signing for the credit insurance must have involved a purchase-money loan, which is defined as "a cash advance which is received by a consumer in return for a `Finance Charge' within the meaning of the Truth in Lending Act and Regulation Z, which is applied, in whole or substantial part, to a purchase of goods or services from a seller who (1) refers customers to the creditor or (2) is affiliated with the creditor by common control, contract, or business arrangement."[12]
A "finance charge" is defined under Regulation Z as "[t]he cost of consumer credit as a dollar amount. It includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or as a condition of the extension of credit."[13] Included as finance charges are "premiums or other charges for credit life, accident, health, or loss-of-income insurance, written in connection with a credit transaction."[14] But voluntary credit-insurance premiums may be excluded from the finance charge if the insurance is not required by the creditor and that fact is disclosed, the premium is disclosed, and the consumer signs or initials an affirmative written request after receiving the disclosures.[15] And "insurance written in connection with a transaction" does not apply to an open-end credit transaction where the consumer requests the insurance after the consummation or opening of the credit account.[16]
In this case, the credit-card application containing the option for the insurance stated that it cost fifty- nine cents per $100 of Vonderheide's ending monthly statement. There are several problems with Vonderheide's allegation against First National. First, under Vonderheide's view, First National would have had to be a seller referring Vonderheide to itself as a creditor, but not acting as a credit-card issuer. Even if we make this stretch, the contract was clearly not for a purchase-money loan. There is nothing to indicate that Vonderheide was provided a cash advance. Finally, there was no finance charge involved. Regulation Z exempts the premiums for credit insurance, such as those that occurred in this case, from the definition of finance charge.[17] Thus, the option for insurance here was not a purchase-money loan because neither did it constitute a cash advance nor was it in return for a finance charge.
Because we have concluded that First National was not required to provide the Section 433.2(b), Title 16, C.F.R. notice, there was no basis on which First National fell subject to the Civ.R. 19 joinder requirements. Vonderheide has failed to demonstrate how joinder of First National was needed for a just adjudication in this case. We conclude that the trial court did not abuse its discretion in denying Vonderheide's motion to join First National. Thus, we overrule Vonderheide's third assignment.
Finding no error, we affirm the trial court's judgment.
Hildebrandt, P.J., and Winkler, J., concur.
[1] See Section 1692 et seq., Title 15, U.S.Code.
[2] See Section 1692e(10), Title 16, U.S. Code (prohibiting the use of false representations or deceptive means in debt collection).
[3] Section 45(a)(1), Title 15, U.S.Code.
[4] See Peterson v. Teodosia (1973), 34 Ohio St.2d 161, 165,297 N.E.2d 113, 117.
[5] See id. at 166, 297 N.E.2d at 117.
[6] See O'Brien v. University Community Tenants Union, Inc. (1975),42 Ohio St.2d 242, 327 N.E.2d 753.
[7] R.C. 1319.12(B).
[8] Section 433.1(a), Title16, C.F.R.
[9] Section 433.1(c), Title 16, C.F.R.
[10] Section 266.12(c)(1), Title 12, C.F.R.
[11] Section 266.12(c)(1), Title 12, C.F.R.
[12] Section 433.1(d), Title 16, C.F.R.
[13] See Section 226.4, Title 12, C.F.R.
[14] Section 226.4(b)(7), Title 12, C.F.R.
[15] Section 226.4(d)(8), Title 12, C.F.R.
[16] See Comments 4(b)(7) and 4(b)(8) to Section 226.4, Title 12, C.F.R.
[17] Section 226.4(d)(1), Title 12, C.F.R.